UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
ANGELO LOPES,                                                    Index No.


                              Plaintiff,
                                                                **COMPLAINT**
        -against-

JLM DECORATING NYC INC, COSMOPOLITAN            Jury Trial Demanded
INTERIOR NY CORPORATION, JLM DECORATING, INC.,
CITY VIEW BLINDS OF N.Y. INC.,
MOSHE GOLD, JOEL GOLD a/k/a SAM GOLD a/k/a
SHIMMY GOLD, and MARITZA RODRIGUEZ a/k/a MARITZA SIME

                              Defendants.
-------------------------------------------------------------

        Plaintiff, Angelo Lopes ("Plaintiff"), by his attorney, THE LAW OFFICE OF JON A.

STOCKMAN, as and for his Complaint, respectfully alleges the following:

## NATURE OF THE CASE

        1.      Plaintiff brings this action under Section 215 of the New York Labor Law

("NYLL").

## JURISDICTION AND VENUE

        2.      This Court has subject matter jurisdiction over this action against Defendants

JLM Decorating NYC Inc, Cosmopolitan Interior NY Corporation, JLM Decorating, Inc., City

View Blinds of N.Y. Inc.,[1] Moshe Gold, Joel Gold a/k/a Sam Gold a/k/a Shimmy Gold, and

Maritza Rodriguez a/k/a Maritza Sime (hereinafter collectively referred to as "Defendants")

pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of a different state than each of the

Defendants and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of

interest and costs.

---

[1] Defendants JLM Decorating NYC Inc, Cosmopolitan Interior NY Corporation, JLM Decorating, Inc., and City
View Blinds of N.Y. Inc. are collectively referred to as "the Corporate Entities" throughout this Complaint.

1

3.      This action properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because the events giving rise to the claim occurred within this judicial district and because the Corporate Entities reside in this judicial district.

## THE PARTIES

4.      Plaintiff is a resident of the State of Pennsylvania, County of Pike.

5.      At all times relevant to the Complaint, Plaintiff was an "employee" of the Corporate Defendants.  Plaintiff was also an "employee" of Defendants Moshe Gold, Joel Gold, and Maritza Rodriguez (within the meaning of the NYLL) when he suffered the adverse employment actions discussed in this Complaint.

*Corporate Entities*

6.      Upon information and belief, Defendant JLM Decorating NYC Inc is and was a domestic business corporation incorporated in the State of New York with its principal offices located at 111 John St, New York, NY 10038.  In the New York Secretary of State's corporate database, Defendant JLM Decorating NYC Inc's principal executive office is listed as 199 Lee Ave #1016, Brooklyn, NY 11211.  However, upon information and belief, 199 Lee Ave #1016, Brooklyn, NY 11211 is just a mailing address.

7.      At all times relevant to the Complaint, Defendant JLM Decorating NYC Inc was Plaintiff's "employer" within the meaning of the NYLL.

8.      Upon information and belief, Defendant Cosmopolitan Interior NY Corporation is and was a domestic business corporation incorporated in the State of New York with its principal offices located at 111 John St, New York, NY 10038.  In the New York Secretary of State's

2

corporate database, Defendant Cosmopolitan Interior NY Corporation's principal executive office is listed as 315 West 39th Street, Suite 502, New York, NY 10018.

9.      At all times relevant to the Complaint, Defendant Cosmopolitan Interior NY Corporation was Plaintiff's "employer" within the meaning of the NYLL.

10.     Upon information and belief, Defendant JLM Decorating, Inc. is and was a domestic business corporation incorporated in the State of New York with its principal offices located at 111 John St, New York, NY 10038.

11.     At all times relevant to the Complaint, Defendant JLM Decorating, Inc. was Plaintiff's "employer" within the meaning of the NYLL.

12.     Upon information and belief, Defendant City View Blinds of N.Y. Inc. is and was a domestic business corporation incorporated in the State of New York with its principal offices located at 315 West 39th Street, Suite 502, New York, NY 10018.

13.     At all times relevant to the Complaint, Defendant City View Blinds of N.Y. Inc. was Plaintiff's "employer" within the meaning of the NYLL.

*Individual Defendants*

14.     Upon information and belief, Defendant Moshe Gold is and was a resident of the State of New York, County of Kings.

15.     At all times relevant to the Complaint, Defendant Moshe Gold was the Chief Executive Officer of each of the Corporate Entities.  Upon information and belief, at all times relevant to the Complaint, Defendant Moshe Gold had the power to hire and fire employees of each of the Corporate Entities, supervised and controlled the work schedules and conditions of employment of employees of each of the Corporate Entities, determined the rate and method of payment to employees of each of the Corporate Entities, and maintained employment records for

each of the Corporate Entities.  Accordingly, Defendant Moshe Gold was Plaintiff's "employer" within the meaning of the NYLL.

16.     Defendant Moshe Gold can also be held liable under NYLL 215 as an agent, officer, and/or any other person.

17.     Defendant Moshe Gold actually participated in the decision to reduce Plaintiff's salary and to terminate Plaintiff's employment in retaliation for his having engaged in NYLL § 215 protected activity.

18.     Upon information and belief, Joel Gold a/k/a Sam Gold a/k/a Shimmy Gold is and was a resident of the State of New York, County of Kings.

19.     Defendant Joel Gold a/k/a Sam Gold a/k/a Shimmy Gold is the son of Defendant Moshe Gold.

20.     Upon information and belief, at all times relevant to the Complaint, Defendant Joel Gold a/k/a Sam Gold a/k/a Shimmy Gold had the power to hire and fire employees of each of the Corporate Entities, supervised and controlled the work schedules and conditions of employment of employees of each of the Corporate Entities, determined the rate and method of payment to employees of each of the Corporate Entities, and maintained employment records for each of the Corporate Entities.  Accordingly, Defendant Joel Gold a/k/a Sam Gold a/k/a Shimmy Gold was Plaintiff's "employer" within the meaning of the NYLL.

21.     Defendant Joel Gold a/k/a Sam Gold a/k/a Shimmy Gold can also be held liable under NYLL § 215 as an agent, officer, and/or any other person.

22.     Upon information and belief, Defendant Joel Gold a/k/a Sam Gold a/k/a Shimmy Gold actually participated in the decision to reduce Plaintiff's salary and to terminate Plaintiff's employment in retaliation for his having engaged in NYLL § 215 protected activity. Plaintiff

4

respectfully submits that his allegation that Defendant Joel Gold a/k/a Sam Gold a/k/a Shimmy Gold actually participated in the decision to reduce Plaintiff's salary and to terminate Plaintiff's employment will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

23.     Upon information and belief, Defendant Maritza Rodriguez a/k/a Maritza Sime is a resident of the State of New York, County of Queens.

24.     Upon information and belief, at all times relevant to the Complaint, Defendant Maritza Rodriguez a/k/a Maritza Sime had the power to influence hiring and firing decisions for each of the Corporate Entities, supervised and controlled the work schedules and conditions of employment of employees of each of the Corporate Entities, determined the rate and method of payment to employees of each of the Corporate Entities, and maintained employment records for each of the Corporate Entities.  Accordingly, Defendant Maritza Rodriguez a/k/a Maritza Sime was Plaintiff's "employer" within the meaning of the NYLL.

25.     Defendant Maritza Rodriguez a/k/a Maritza Sime can also be held liable under NYLL 215 as an agent, officer, and/or any other person.

26.     Upon information and belief, Defendant Maritza Rodriguez a/k/a Maritza Sime actually participated in the decision to reduce Plaintiff's salary and to terminate Plaintiff's employment. Plaintiff respectfully submits that his allegation that Defendant Maritza Rodriguez a/k/a Maritza Sime actually participated in the decision to reduce Plaintiff's salary and to terminate Plaintiff's employment will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

*Single Integrated Enterprise*

27.     Plaintiff was jointly employed by the Corporate Entities, which together functioned as a single integrated enterprise.

28.     The operations of the Corporate Entities were/are interrelated and unified.

29.     Each of the Corporate Entities were managed, controlled, and owned by Moshe Gold.  Likewise, upon information and belief, Joel Gold and Maritza Rodriguez acted in a managerial capacity for each of the Corporate Entities.  Additionally, the Corporate Entities shared employees.  Moreover, the Corporate Entities operated out of the same locations; 111 John St, New York, NY 10038 and 315 West 39th Street, Suite 502, New York, NY 10018.

## THE FACTS

30.     Plaintiff was employed by the Corporate Entities as a Vice President of Operations from in or around September, 2015 through on or about June 14, 2019 when Defendants unlawfully terminated Plaintiff's employment.

31.     Throughout Plaintiff's employment with the Corporate Entities, Plaintiff worked for such entities in New York.  Plaintiff typically worked out of Defendants' office at 111 John St, New York, NY 10038.

32.     Notably, Plaintiff was given a business card indicating he was a representative of Cosmopolitan Interior NY, a business card indicating he was a representative of City View Blinds of N.Y. Inc., and another business card indicating he was a representative of JLM Decorating.

33.     The Corporate Entities operated/operate a contracting and renovation business.

34.     Plaintiff was hired by Moshe Gold to obtain commercial painting business for the Corporate Entities.

35.     Initially, the Corporate Entities' commercial painting work was performed by W2 employees of such entities.

36.     At some point, Plaintiff suggested that the Corporate Entities hire qualified subcontractors to perform commercial painting work rather than having such entities using their own employees to perform such work.

37.     Joel Gold and Maritza Rodriguez opposed Plaintiff's suggestion.

38.     Under Moshe Gold's, Joel Gold's, and Maritza Rodriguez's direction, the Corporate Entities engaged in a scheme to avoid paying employment taxes and to avoid compliance with the relevant wage and hour laws.  Specifically, the Corporate Entities would assign an employee to act as foreman on a commercial painting job and the Corporate Entities would direct such foreman to hire day laborers and pay them "off the books" in cash without providing them an accompanying wage statement with the information required by NYLL 195(3).

39.     The Corporate Entities exercised supervision and control over the day laborers performing commercial painting work (hereinafter referred to as "the Workers").  The Corporate Entities required the Workers to work at specific job sites at hours dictated by such entities, the Corporate Entities supplied the tools used by such workers, and the Corporate Entities supervised the work performed by such workers.  Accordingly, for the purposes of the NYLL's wage and hour requirements, the Workers were employees of the Corporate Entities, not independent contractors.  At the very least, Plaintiff possessed a reasonable and good faith belief that the Workers were the Corporate Entities' employees rather than independent contractors.

40.     Plaintiff complained to Moshe Gold on numerous occasions that the Corporate Entities were violating the law by failing to provide the Workers with wage statements when such workers were given their payments.

41.     Likewise, Plaintiff complained to Joel Gold and Maritza Rodriguez on numerous occasions that the Corporate Entities were violating the law by failing to provide the Workers with wage statements when such workers were given their payments.

42.     Shortly after Plaintiff engaged in NYLL 215 protected activity, Defendants retaliated against him for doing so.

### Plaintiff's NYLL 215 Protected Activity

43.     On or about November 28, 2018, Plaintiff complained to Moshe Gold that the Corporate Entities were violating the law by failing to give the Workers wage statements with their payments.  In this instance, Plaintiff complained to Moshe Gold that the Corporate Entities were violating the law by failing to give the Workers wage statements explaining how pay was calculated and showing the hourly rate of pay and overtime rate of pay.

44.     On or about January 8, 2019, Plaintiff again complained to Moshe Gold that it was illegal not to provide the Workers with pay stubs.  Plaintiff also complained that it was illegal to pay a foreman to hire people off the street and pay them cash.

45.     Shortly thereafter, on or about February 10, 2019, Defendants reduced Plaintiff's salary by half from $150,000.00 to $75,000.00 (plus commission).  Upon information and belief, Defendants did not possess a legitimate non-retaliatory reason for reducing Plaintiff's salary. Given the temporal proximity between Plaintiff's aforementioned complaints and the decision to reduce Plaintiff's salary by half, a reasonable jury could conclude that such decision was made in retaliation for Plaintiff's having engaged in NYLL 215 protected activity.

8

46.     On or about February 15, 2019, Plaintiff again complained to Moshe Gold about the Corporate Entities' practice of not giving the Workers payroll checks or pay stubs.  Plaintiff also complained to Moshe Gold that the Workers weren't even making minimum wage for the hours they were working.

47.     On or about March 18, 2019, Plaintiff once again complained to Moshe Gold that the Corporate Entities had to start doing jobs legally.  Plaintiff once again recommended that the Corporate Entities hire a legitimate sub-contractor, who would pay their workers by check and would give their workers wage statements containing the number of hours worked.

48.     On or about April 17, 2019, Plaintiff complained to Joel Gold *inter alia* that Defendants were violating the law by failing to provide wage statements to the Workers.

49.     On or about May 13, 2019, Plaintiff spoke to Joel Gold and Jose Arais (Project Manager) about the Corporate Entities' failure to pay the Workers on the books and the Corporate Entities' failure to provide them wage statements.  Plaintiff indicated to Mr. Gold and Mr. Arais that they were going to get in trouble with the IRS and the state regulations, as well as workers comp.

50.     Additionally, during the period after on or about November 28, 2018 through Plaintiff's termination, Plaintiff made numerous complaints to Maritza Rodriguez at bi-weekly meetings (with her and Joel Gold) about the Corporate Entities' failure to give the Workers wage statements.

51.     On or about June 6, 2019, Plaintiff communicated with his co-worker Eli Nichtberger about the Corporate Entities' scheme of hiring day laborers to perform commercial painting work and paying them in cash without providing them wage statements.  Plaintiff

communicated to Mr. Nichtberger that it's only a matter of time before it all comes crashing down for the Corporate Entities

52.     On or about June 14, 2019, Moshe Gold informed Plaintiff that his employment with the Corporate Entities was being terminated.  Without any legitimate justification, Mr. Gold claimed that he couldn't trust Plaintiff anymore.

53.     Given the temporal proximity between Plaintiff's engaging in NYLL 215 protected activity and Defendants' decision to terminate Plaintiff and given that Defendants did not possesses a legitimate non-retaliatory reason to terminate Plaintiff, a reasonable jury could conclude that Plaintiff's engagement in such protected activity was the "but-for" reason for Defendants' decision to terminate Plaintiff or at the very least that Plaintiff's engagement in such protected activity played a role in Defendants' decision to terminate Plaintiff.

### FIRST CLAIM FOR RELIEF
*(Violation of NYLL 215 by All Defendants-Retaliation)*

54.     Plaintiff repeats and realleges each and every allegation contained herein.

55.     Plaintiff reasonably and in good faith believed that Defendants' failure to provide wage statements to the Workers violated a provision of the New York Labor Law.

56.     Plaintiff's aforementioned communications constitute protected activity pursuant to NYLL § 215 as such communications were of a colorful violation of various sections of the New York Labor Law and regulations promulgated pursuant thereto (including NYLL 195(3)).

57.     Defendants violated NYLL § 215 by reducing Plaintiff's salary in retaliation for his having engaged in the aforementioned protected activity.

58.     Defendants violated NYLL § 215 by terminating Plaintiff's employment in retaliation for his having engaged in the aforementioned protected activity.

10

59.     Defendants violated NYLL § 215 by terminating Plaintiff's employment because Defendants believed Plaintiff complained of a colorable violation of the New York Labor Law to Defendants.

60.     As a proximate result of Defendants' retaliatory actions, Plaintiff has suffered and continues to suffer substantial loss of earnings, and related employment benefits.

61.     As a proximate result of Defendants' retaliatory actions, Plaintiff has suffered emotional distress, significant stress, and physical health ramifications.

62.     Plaintiff is entitled to an award for damages for his past and future economic loss, and an award for compensatory damages in an amount to be determined at trial, plus attorneys' fees, costs, and pre and post judgment interest.

63.     Additionally, due to the severity of Defendants' conduct and their blatant disregard for the rule of law, Plaintiff is also entitled to an award of punitive damages in an amount to be determined at trial.  By reducing Plaintiff's salary and terminating Plaintiff's employment in whole or in part based on his engaging in NYLL § 215 protected activity, Defendants and their agents knowingly violated NYLL § 215 and/or acted in reckless disregard of Plaintiff's rights under NYLL § 215.  Upon information and belief, Defendants were aware of the relevant anti-discrimination laws (including NYLL § 215). Upon information and belief, Defendants posted some of the anti-discrimination notices required by law.

64.     In addition to the above, Plaintiff is also entitled to liquidated damages in the amount of twenty thousand dollars ($20,000.00).

## DEMAND FOR JURY TRIAL

65.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

WHEREFORE, as a result of the unlawful conduct and actions of the Defendants herein alleged, Plaintiff demands judgment as follows:

i.   awarding compensatory damages in the amount of $125,000.00 or more;

ii.  awarding back pay and front pay, and affording all benefits that would have been afforded Plaintiff but for Defendants' unlawful actions in the estimated sum of $1,500,000.00;

iii. awarding Plaintiff punitive damages in the amount of $5,000,000.00 or more;

iv.  awarding Plaintiff NYLL § 215 liquidated damages in the amount of $20,000.00;

v.   awarding Plaintiff's cost of this suit;

vi.  awarding reasonable attorneys' fees;

vii. awarding pre- and post-judgment interest; and

viii. awarding such other and further relief as the court deems just and proper.

Dated: New York, New York
       December 26, 2019

Respectfully submitted,
**THE LAW OFFICE OF**
**JON A. STOCKMAN**

By:   /S/ Jon A. Stockman_____
      Jon A. Stockman, Esq. (JS6246)
      32 Broadway, Suite 1710
      New York, New York 10004
      (516) 547-6418 telephone
      jstockman@yournycattorney.com
      Attorney for Plaintiff, Angelo Lopes

12